Keith E. GAFFNEY, Appellant,

v.

UNITED STATES, Appellee.

Willie C. ENGRAM, Appellant,

v.

UNITED STATES, Appellee.

Nos. 11311, 11319.

District of Columbia Court of Appeals.

Argued Sept. 22, 1978.

Decided Aug. 19, 1980.[1]

---

1. Decision of this case was held in abeyance pending the en banc decision in *United States v. Alston*, D.C.App., 412 A.2d 351 (1980), which we now conclude does not require a result different from the one we reach in this case. *Alston* is conditioned on post–conviction appellate delay, *id.* at 356, whereas this case involves an interlocutory appeal and its attendant delay preceding trial.

Steffen W. Graae, Washington, D. C., appointed by this court, with whom Bruce M. Clarke, Washington, D. C., was on the brief, for appellant Gaffney.

Mady B. Gilson, Public Defender Service, Washington, D. C., for appellant Engram. Silas J. Wasserstrom, Public Defender Service, Washington, D. C., also entered an appearance.

Joel S. Perwin, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty. at the time the case was argued, and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before KERN, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

Both appellants, having been found guilty of various crimes,[2] seek reversal of their convictions on the grounds that they were denied a speedy trial, that the trial court failed to voir dire the jury concerning newspaper publicity and that the arrest and conviction records of government witnesses were not produced prior to trial. Both appellants also seek vacation of their sentences on the ground that the sentencing judge "was not sufficiently familiar with the facts of the case to be able to render an appropriate sentence." Appellant Gaffney also requests reversal because the trial court improperly restricted his cross–examination of a government witness and vacation of his sentence because he was denied effective assistance of counsel at sentencing. We affirm for the reasons stated below.

Only a brief synopsis of the facts is necessary in view of the nature of the issues on appeal. The appellants, Engram and Gaffney, were allowed entry into the apartment of a Miss Owens by her friend, Mr. McAdory, while she and another friend, Miss Wade, were out getting some wine. When the women returned to the apartment, both Engram and Gaffney robbed at gunpoint Miss Owens and Mr. McAdory. Engram raped Miss Wade and attempted to rape

2. Both appellants were convicted and sentenced as follows: (1) 15 years to life for assault with intent to rape while armed; (2) 15 years to life for assault with intent to kill while armed; (3) 15 years to life for one count of armed robbery, these three sentences to run concurrently with each other but consecutively to the sentences imposed on the other counts; (4) 15 years to life for kidnapping and 15 years to life for one count of rape while armed, these two sentences to run concurrently with each other but consecutively to the sentences previously imposed; (5) 15 years to life for the second count of armed robbery, to run consecutively to the other sentences imposed; (6) 15 years to life for the second count of rape while armed, to run consecutively to the previously imposed sentences; and (7) 40 months to 10 years for carrying a pistol without a license (felony) to run concurrently with the other sentences. Engram's total sentence was 60 years to life, to run consecutively to any sentences previously imposed. Gaffney was additionally sentenced to 15 years to life for burglary in the first degree while armed, 15 years to life for the third count of rape while armed, and 15 years to life for the third armed robbery, these three sentences to run concurrently with each other but consecutively to the sentences imposed on the other counts. Gaffney's total sentence was 75 years to life, to run consecutively to any sentence previously imposed.

Miss Owens. When Owens resisted, he shot her in the chest. As she crawled towards the telephone, he kicked her in the side resulting in the spraying of blood over the area. Engram ordered Mr. McAdory to get into a closet, and then both he and Gaffney left, taking Miss Wade with them. After an extended drive, the three arrived at another apartment where they were admitted by a woman who seemed to know Gaffney. Engram again raped Miss Wade in this apartment. The three then left and drove to the apartment of Miss Crawford. Miss Crawford knew Engram and let them in. She loaned Miss Wade (who was introduced as Engram's lady) some clothing and they all went for a drive. After returning Miss Crawford to her apartment, Engram and Gaffney drove off with Miss Wade. Gaffney said that he wanted to return to Miss Crawford's apartment, so Engram and Miss Wade got out of the car. Eventually, Engram let Miss Wade go home after threats that she had to meet him the next day. Gaffney returned to Miss Crawford's apartment where he raped and robbed her.

## I. SPEEDY TRIAL

▮ The government did not abridge appellants' right to a speedy trial. This holding results from an application of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), wherein the Court rejected two rigid speedy trial tests for "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. at 2191–92 (footnote omitted). We are "[compelled] to approach speedy trial cases on an ad hoc basis." *Id.* The *Barker* Court "[identified] some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right," *id.*, and specified "four such factors: Length of [and] reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* (footnote omitted).

### A. *The Length of the Delay*

Thirty–three months expired between Engram's arrest in July of 1973 and his trial, which began in April of 1976. Gaffney was arrested about one and one–half months after Engram. He was tried jointly with Engram. However, our inquiry does not stop here as we must assess the other three factors of the *Barker* test.

### B. *Reasons for the Delay and the Consequential Weighing*

The following chronological outline identifies the reasons for the delay:

July 30, 1973–Engram arrested and, following arraignment, trial was set for November 8, 1973.

September 9, 1973–Gaffney arrested.

November 5, 1973–All counsel agreed to a continuance because an anticipated disposition of this case had not occurred. Trial was set for February 21, 1974.

December 21, 1973–Gaffney indicted and Engram reindicted charging the defendants jointly. Both were arraigned on January 2, 1974. The February 21, 1974, trial date for Engram was retained.

February 19, 1974–Case was continued because the prosecution and Gaffney were unprepared for the February 21 trial. The court set a February 27 status hearing. (Engram's counsel was absent, being in trial.)

February 27, 1974–Trial set for May 2, 1974.

April 23, 1974–Court ordered government to reveal to defense counsel seven days before trial the arrest and conviction records of its witnesses.

May 2, 1974–Over objection, the prosecution moved for a continuance because it was not prepared for Gaffney's case. Gaffney's counsel requested leave to withdraw because both he and Engram's counsel were from the Public Defender Service and therefore a conflict of interest might arise. The government had not yet complied with the April 23 disclosure order. A status hearing was set for May 8, 1974.

May 8, 1974–Court appointed new counsel for Gaffney and imposed the sanction

of suppression of testimony of witnesses concerning whom the government had not complied with the April 23 order. Trial was set for August 15, 1974.

June 3, 1974–Prosecution filed a notice of appeal of the suppression order (entered May 22 by a memorandum opinion).

May 14, 1975–Court of Appeals reversed the trial court's order.

June 3, 1975–Case reassigned to trial judge.

June 24, 1975–Court of Appeals denied appellant's petition for rehearing.

July 24, 1975–Mandate issued in Gaffney case.

January 12, 1976–Supreme Court denies appellants' petition for certiorari.

January 27, 1976–Mandate issued in Engram case.

February 18, 1976–At status hearing, all agreed another status hearing should be set. The court proposed February 26 but set March 14 at the prosecution's request.

February 23, 1976–Engram files a motion to dismiss for lack of speedy trial.

March 18, 1976–(March 12 hearing was continued to this date.) Gaffney joins Engram's motion to dismiss for want of speedy trial. Court took speedy trial motion under advisement.

April 26, 1976–After requests for continuances by Gaffney and the prosecution, trial begins.

The resolution of a speedy trial issue would be easier if a court needed only to total the days attributed to each party and hold for the party with the greater number. Under *Barker*, however, the task is more complex: the days must be weighed according to the reasons for the delay. *Barker* noted three points on the spectrum of weights: intentional delay (weighed "heavily"), negligent delay ("[a] more neutral reason"), and unavoidable delay (not weighed). *Barker v. Wingo, supra* at 531, 92 S.Ct. at 2192.

Appellant Engram argues that the government should be charged with much of the delay. However, certain charges are unwarranted. For example, he asserts that the "issuance of [his] second indictment resulted in a delay of over two months in early 1974." We read the record to indicate otherwise. Although Engram's first trial date was November 8, 1973, all counsel agreed, on November 5, to a continuance. The new date for trial was February 2, 1974, which was retained at the joint indictment and arraignment. The trial date set for Engram alone, therefore, was not altered because Gaffney was joined.

■ Engram also asserts that the nineteen months of appeal are attributable to the government. *See Day v. United States,* D.C.App., 390 A.2d 957 (1978).[3] While conceivably the government is responsible for eleven months prior to the Court of Appeals decision, we fail to understand why the government's side of the scales should be weighed with the time attributable to appellants' petition for rehearing and petition

---

**3.** Insofar as *Day v. United States, supra,* requires the government to prod this court into a prompt decision of its appeal or otherwise be charged "significantly" with the delay, we do not impose that duty retrospectively. *Cf. Jenkins v. Delaware,* 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969) (*Miranda* requirements do not have to be applied to retrials of cases originally tried prior to the date of the decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); *De Stefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308, *reh. denied, Carcerano v. Gladden,* 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 185 (1968) (retroactivity denied of a Supreme Court decision involving right to jury trial); *Fuller v.*

*Alaska,* 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 *reh. denied,* 393 U.S. 992, 89 S.Ct. 442, 21 L.Ed.2d 457 (1968) (retroactively denied of decision regarding inadmissibility of wiretap evidence); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (no retroactivity of rule regarding right to assistance of counsel at a police lineup identification). *See generally* Annot., *Supreme Court Decision–Retroactivity,* 22 L.Ed.2d 821 (1970).

Moreover, the Internal Operating Procedures of this Court–giving priority to government appeals over most other cases were adopted in 1978. We are disinclined to apply these later adopted factors to the trial court's ruling in this case.

for certiorari. Contrary to appellants' contentions in their briefs, we do not read *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), *Barker v. Wingo, supra*, or *United States v. Perry*, 353 F.Supp. 1235 (D.D.C.), *aff'd without opinion*, 159 U.S.App.D.C. 343, 487 F.2d 1214 (1973), to mandate that appellate delay of nineteen months in this case be attributable to the government.

Certain of Engram's charges of time to the government are warranted. For example, the responsibility for the delay resulting from crowded court dockets is ultimately borne by the government. *E. g., Strunk v. United States, supra.* While much of the delay was attributable to Gaffney's unpreparedness, the consequential delay of Engram's trial is somewhat weighed against the government because the government chose to try the appellants jointly. The responsibility for some decisions to delay is borne by both appellants and the government. For example, in 1974, delay was caused by Gaffney's counsel withdrawing on account of a conflict of interest because both he and Engram's counsel were employed by the Public Defender Service. It was incumbent on one or the other to withdraw at that late date.

In summary, the delay involved in this case falls entirely within the last two points on the *Barker* analysis spectrum—either a negligent delay or an unavoidable delay. There is no suggestion of intentional government delay. From the government's position, much of the delay, including the time ensuing between the reversal by the Court of Appeals and the Supreme Court's denial of certiorari, was unavoidable. Of the two appellants, Engram's position is comparatively better. Engram was arrested at a later date than Gaffney and Gaffney was responsible for more delay than was Engram.

## C. *Assertion of the Right*

Gaffney first asserted his right on March 18, 1976, by joining Engram's motion to dismiss. He tacitly admits his tardiness by stating that he was unable to earlier assert

his right due to his representation by five successive attorneys. We agree with the prosecution that any one of the five could have asserted Gaffney's right.

Engram's case, by contrast, is more difficult. As early as November 5, 1973, Engram asserted that he was "very interested" in being brought to trial as early as possible. A reading of the record, however, raises the question of whether Engram's assertions were more formal than genuine. We offer two examples to illustrate. First, on November 5 it was Engram who initially requested a continuance, although the trial judge warned Engram's counsel that "any rescheduling of the trial date at this time is going to likely result in a new trial date being in February." Faced with the alternatives, all agreed on a postponement. Second, on May 2, 1974, the court asked counsel if they objected to the court granting the government's motion for a continuance. Gaffney's counsel stated that Gaffney did not oppose the request. Engram's counsel stated to the court that he had earlier told the prosecutor that Mr. Engram would oppose it. Counsel then stated, "Personally, as his counsel, I would, I think, in a case that has 32 counts in an indictment, also feel I could use more time to prepare it. However, I must state for Mr. Engram that we are opposed to the continuance." In essence, counsel appears to be objecting for the record while encouraging the court to grant the continuance. We cannot give validity to a speedy trial claim in this context for to do so would tend to force an unprepared defense counsel to trial and subject him on a conviction to charges of ineffectiveness of counsel. The government cannot be "whipsawed" between speedy trial and ineffective assistance claims.

## D. *Prejudice*

The appellants assert they have suffered presumed and actual prejudice. As to the presumed prejudice, we question the wisdom of presuming that the appellants are prejudiced in their ability to defend. As the Supreme Court stated in *Barker*:

A ... difference between the right to speedy trial and the accused's other constitutional rights is that *deprivation of the right may work to the accused's advantage.* Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self–incrimination, *deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself.* [*Barker v. Wingo, supra* at 521, 92 S.Ct. at 2187 (emphasis added).]

Prejudice from pretrial incarceration is minimal because both appellants were serving sentences for other convictions.

Both appellants claim actual prejudice in their ability to defend. Gaffney asserts that his witnesses were unable to recall "important details," but cites only to two pages of the more than 1,000 pages of transcript. The two pages cover a portion of the testimony of one witness. After examining the record, we believe that any prejudice caused by the failure of memory displayed on those pages was negligible. Gaffney does not explain why the forgotten details were important or how they related to his defense. The witness, who testified on the sixth day of trial, was first contacted about being a witness only three days before she testified.

Engram asserts that he and two other witnesses were unable to recall "details which were critical to [his] defense," citing about 20 pages of the transcript. Engram does not elaborate why the particular details were "critical" and after reading the transcript, it appears any lapse of memory was minimally prejudicial, and perhaps helpful, to the defense. One of Engram's forgetful witnesses is the person to whose testimony Gaffney directed our attention. The second was first contacted about being a witness in the case in August of 1975–af-

ter the Court of Appeals' reversal but prior to the Supreme Court decision–two years after Engram's arrest. Despite both witnesses being friends of the appellants and apparently available subsequent to their arrest, the appellants offer no reason why they were not contacted earlier so as to preserve their testimony or, at minimum, to ascertain early on what testimony they could offer or what details they could remember. These factors weigh in balancing actual prejudice in defending.

Gaffney alone claims actual prejudice for the additional reason that "during the thirty–one [*sic*] month period between appellant's arrest and trial, [he] became twenty–two years of age and was thus ineligible for sentencing under the Federal Youth Corrections Act, 18 U.S.C. § 5006 [(d) (Supp. V 1975)]." According to his presentence report, Gaffney was born on May 22, 1954. The verdict was returned on May 4, 1976; Gaffney was sentenced on August 18, 1976. Assuming that the presentence report is correct, Gaffney achieved twenty–two years, and thus ineligibility under the Youth Corrections Act, between the verdict and the sentencing. It is unnecessary here for this court to resolve the issue of whether "conviction," as used in 18 U.S.C. § 5006(g), means the rendition of the verdict or whether it means the entry of the judgment. *See, e. g., Bailey v. United States,* D.C.App., 385 A.2d 32, *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978); *Jenkins v. United States,* 555 F.2d 1188 (4th Cir. 1977). *See also United States v. Morgan,* 185 U.S.App.D.C. 372, 567 F.2d 479 (1977). Immediately following the return of the verdict, Gaffney's counsel requested that sentencing be deferred thirty days, until after Gaffney's twenty–second birthday. Thus, any ineligibility for Youth Corrections Act treatment is attributable to appellant's request to delay sentencing.

In addition to the above, we note that the case was complex. The Gaffney indictment contained thirty–two counts and Engram's contained twenty–six; the trial was about a week in duration. All factors weighed, we hold that appellants were not denied their right to a speedy trial.

## II. APPELLANTS' OTHER CLAIMS FOR REVERSAL

■ Appellants' other claims of error provide no grounds for reversal or vacating their sentences. First, both appellants claim that the trial judge refused to voir dire the jury concerning newspaper publicity [4] and that this refusal constitutes reversible error. Concerning the trial judge's alleged refusal, we question whether he indeed refused.[5] Assuming he refused, the record reflects no "clear showing of miscarriage of justice," which is our standard for reviewing this point. *Adams v. United States*, D.C.App., 302 A.2d 232, 234 (1973); *see Watts v. United States*, D.C.App., 362 A.2d 706, 709 (1976) (en banc). The article did not refer to the appellants or mention their trial and is thus distinguishable from *Coppedge v. United States*, 106 U.S.App. D.C. 275, 272 F.2d 504 (1959), *cert. denied*, 368 U.S. 855, 82 S.Ct. 92, 7 L.Ed.2d 52 (1961), on which the appellants heavily rely. The judge's admonition to the jury following the discovery of the article was sufficient to protect the "fairness and integrity of the trial." *Watts v. United States, supra. See Parker v. Randolph*, 442 U.S. 62, 74, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979).

Second, the appellants ask, for the third time,[6] that we require the government to disclose the arrest and conviction records of its witnesses prior to trial. In particular, the appellants state that dictum [7] in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), "casts doubt on the continuing validity of" our reported decision [8] on the issue. We are hard pressed to glean sufficient grounds from *Agurs* to recommend en banc consideration of whether to overrule our prior decision and thus, being bound by our precedent, we affirm on this issue. *Jenkins v. United States*, D.C. App., 284 A.2d 460 (1971).

■ Third, both appellants state that their sentences "must be vacated because

---

4. On the day that the judge instructed the jury, there appeared on the front page of the Washington Post an article reporting this court's decision in *Arnold v. United States*, D.C.App., 358 A.2d 355 (1976) (en banc), which eliminated the corroboration requirement in rape cases.

5. The record reflects:
    THE COURT: I think the danger and detriment to you. I will ask the jury if they have read any newspapers. If some say yes, they have read this particular article, I still advise them they are bound by this law. There's no guarantee that they are not going to consider it.
    It's to your detriment. Now, if you want me to out of an abundance of caution, I will, but—
    MR. TREANOR [Gaffney's counsel]: Well, I would accept that although I don't specifically ask for it, but I do it as a second choice, recognizing the dangers inherent even in that reinstruction on the matter because I think it does tend to highlight the matter.
    I think the only remedy is mistrial.
    THE COURT: No.
    MR. TREANOR: I think it's the only remedy.
    The Court: I will deny that. What's your pleasure, gentlemen? Do you still want me to voir dire this jury, Mr. Rankin?
    MR. RANKIN [Engram's counsel]: I will state for the record I'm at a distinct disadvantage. I haven't seen the newspapers. I heard about this from Mr. Treanor.
Engram's counsel then requested a recess, to which the court replied:
    THE COURT: I'm going to deny the request.
    MR. RANKIN: Your Honor—
    THE COURT: I'm just going to tell them that they are bound by the instructions I gave them yesterday.
    MR. SCHEININGER [Prosecution]: Thank you.
    THE COURT: And they are not to question the wisdom of the law and they are bound by the instructions I gave them yesterday. I'm going to tell them that.
The trial court thus offered to voir dire the jury and asked defense counsel if they desired it. Gaffney's counsel then requested a mistrial, which was denied. The court then asked Engram's counsel if he desired a voir dire. Engram's counsel then requested a recess, which was denied. Not having received an affirmative response from either defense attorney, the judge announced what he proposed to do. There was no objection.

6. *See United States v. Engram*, D.C.App., 337 A.2d 488, *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976).

7. Defendants quote excerpts from *United States v. Agurs*, 427 U.S. 97, 104–06, 96 S.Ct. 2392, 2397–98, 49 L.Ed.2d 342 (1976).

8. *See* note 6 *supra*.

the sentencing judge, who had not presided at the trial, was not sufficiently familiar with the facts of the case to be able to render an appropriate sentence."[9] A judge must be satisfied that he can sentence a defendant, despite his not having presided at trial,[10] but need not certify that he has familiarized himself with the record.[11] We hold that the presentence reports, which the judge read prior to sentencing, contained sufficient information adequately to familiarize the judge with the facts.[12]

 Fourth, Gaffney alone urges that his sentence must be vacated because he was denied the effective assistance of counsel at sentencing. While the representation was not exemplary, neither was it constitutionally[13] deficient.

Finally, Gaffney insists that his conviction should be overturned because the trial court improperly restricted Gaffney's cross–

examination of one of the victims. A review of the record, however, reveals no reversible error in this regard.

Accordingly, the judgments of conviction are

*Affirmed.*

MACK, Associate Judge, dissenting:

I respectfully dissent. *See United States v. Alston,* D.C.App., 412 A.2d 351 (1980) (en banc); *Day v. United States,* D.C.App., 390 A.2d 957 (1978); *Branch v. United States,* D.C.App., 372 A.2d 998 (1977).

---

**9.** The judge, who presided at trial, died after the return of the verdict but before sentencing.

**10.** *See* Super.Ct.Cr.R. 25(b).

**11.** *Compare* Super.Ct.Cr.R. 25(b) *with* Super.Ct.Cr.R. 25(a). We reject appellant's contention that "where the successor judge sentences without reading the trial record, the sentence is based upon inadequate information and must be vacated."

**12.** In *United States v. Bowser,* 497 F.2d 1017 (4th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974), and 423 U.S. 997, 96 S.Ct. 427, 46 L.Ed.2d 372 (1975), although the sentencing judge had the benefit of a presentence report, the appellate court remanded for

resentencing. The court noted, however, the possibility that the sentencing judge "may have actually confused Bowser's role in the robbery with that of another culprit," *id.* at 1019 n.2a, stating, "It is perplexing that in the *same* district another more violent bank robber and a second offender are treated more leniently than Bowser." *Id.* at 1019. There are no analogous facts in the present case.

**13.** "The right to effective assistance of counsel at the sentencing stage of a criminal proceeding is secured by the Constitution." *Hockaday v. United States,* D.C.App., 359 A.2d 146, 150 (1976).