UNITED STATES of America, Appellee,

v.

John A. CERRITO, Defendant, Appellant.

No. 79–1055.

United States Court of Appeals, First Circuit.

Argued Sept. 6, 1979.

Decided Dec. 19, 1979.

John A. O'Neill, Jr., Providence, R. I., for defendant, appellant.

Everett C. Sammartino, Asst. U. S. Atty., Providence, R. I., with whom Paul F. Murray, U. S. Atty., Providence, R. I., was on brief, for appellee.

Before KUNZIG, Judge,* U. S. Court of Claims, CAMPBELL and BOWNES, Circuit Judges.

KUNZIG, Judge.

Defendant appeals from denials of his motion for acquittal or, alternatively, for a new trial. Defendant challenges his conviction on three grounds: First, that the evidence failed to conform to the indictment; second, that certain jury instructions were improper and materially altered the indictment; finally, that the Government's delay in bringing defendant to trial violated his fifth amendment due process rights. For the reasons stated below, we find no merit in defendant's arguments and affirm the denial of his motion by the district court.

Defendant, John A. Cerrito, was president of Hallcraft, Inc.,[1] in the early 1970's. In that capacity, Cerrito entered into an agreement with People's Trust Company, a Rhode Island bank insured by the Federal Deposit Insurance Corporation (FDIC) on February 1, 1971.

Under that agreement, Hallcraft would turn over its accounts receivable and People's Trust would credit Hallcraft's checking account with up to ninety percent of the receivable's face value. The receivables represented amounts owed to Hallcraft by its customers for the sale of merchandise. In the event that People's Trust could not negotiate a receivable or the receivable was invalid, the bank had full recourse against Hallcraft.

In December of 1972 and January of 1973, Hallcraft submitted a number of receivables to People's Trust under the agreement. The receivables were supposedly for merchandise sold to either the Thomas Long Company or Longcraft, Inc., both of Boston, Massachusetts. People's Trust credited Hallcraft's checking account as per the agreement.

Upon attempting to collect from Thomas Long and Longcraft, however, the bank learned that the invoices were false. The matter was referred to the Federal Bureau of Investigation (F.B.I.) on April 19, 1976. After investigating thousands of pages of bank and corporate records, and numerous people, the case was referred to the United States Attorney for presentation to the Grand Jury. An indictment was returned by the Grand Jury against the defendant on November 7, 1977. Originally, the indictment included 25 counts; one conspiracy charge based on 18 U.S.C. § 371 (1976); and, 24 counts alleging violations of 18 U.S.C. § 1014 (1976). The conspiracy count was dismissed. The remaining 24 counts charged defendant with making materially false statements to People's Trust for the purpose of influencing it to advance certain loans to Hallcraft.

After trial, the jury found defendant guilty on all 24 substantive counts. Defendant moved under Federal Rules of Criminal Procedure 29(c) for a judgment of Acquittal or New Trial. His three arguments were that the prosecution's evidence failed to conform to the indictment, certain jury instructions were improper and materially altered the indictment and, finally, the Government's delay in bringing defendant to trial violated his fifth amendment due process rights. The district court denied the motion on every ground.

We affirm.

I.

The first issue defendant raises is whether the evidence presented at trial was in such material variance with the indictment as to require dismissal. Defendant argues that the prosecution failed to prove that defendant made false statements in regard to a loan. He contends that the material variance between the charge and proof prejudiced both his ability to present a proper defense and failed to protect him from possible double jeopardy. *See, Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79

* Sitting by designation.

1. Hallcraft was doing business as Giovanni Jewelry and was a Rhode Island corporation.

L.Ed. 1314 (1935); *United States v. Brown,* 540 F.2d 364, 371 (8th Cir. 1976).

In addressing this issue of variance in proof from indictment, the Supreme Court has stated:

The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. [*Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935).]

Similarly, Fed.R.Crim.P. 52(a) requires the courts to disregard any variance which does not affect the substantial rights of the accused.

We do not consider there to have been any variation in proof and, even if variation occurred, it was not so substantially prejudicial as to warrant dismissal. *Cf., Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

Defendant was charged in each count of the indictment with making a materially false statement in order to induce People's Trust, the bank, to make a loan. As defendant points out, the section under which he was charged is quite broad. He could have violated the statute and been indicted for making a false statement to a bank insured by FDIC upon 1) an application; 2) an advance; 3) a discount; 4) a purchase; 5) a purchase agreement; 6) a repurchasing agreement; 7) a commitment; or 8) a loan. The Grand Jury chose to charge defendant with making a false statement to influence the bank in making a loan despite its ability to charge alternatively. Fed.R.Crim.P. 7(c)(1) (1976).

While we agree with defendant that the Government's proof must conform to the indictment, *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Government's proof in this case is sufficient for a jury to conclude that defendant made false statements in order to influence People's Trust in regard to a loan. *See, United States v. Brown,* 540 F.2d 364 (8th Cir. 1976).

Essentially, defendant complains that the Hallcraft-People's Trust agreement was a purchasing arrangement rather than a loan. Defendant, however, construes the word "loan" too narrowly. It has a relatively "elastic" meaning, 54 C.J.S. Loan at 652, and, "[a]ccording to the context the term may mean debt, deposit, discount." *Id.* at 653.

In general, a loan requires a transfer of consideration with an absolute obligation of repayment. 6 *Michie on Banks and Banking,* ch. 11, § 1 at 238 (1975) (hereinafter *Michie*). Increasingly, the existence of interest is considered a significant factor in determining whether a transaction is a loan. *Michie, supra* at § 1, n.6 (Cumm.Supp.1979).

Ultimately, however, the intent of the parties controls over the form of the transaction. *Id.* at § 1, 238. *Fuqua National, Inc. v. United States,* 334 F.Supp. 1116 (S.D. Georgia 1971).

In the case at bar, although the agreement describes Hallcraft "selling" its receivables to People's Trust, read in context, the language indicates a loan.[2] When the

2. The agreement as written by defendant for Hallcraft and accepted by People's Trust read as follows:

It is expressly agreed that Hallcraft, Inc. (hereinafter referred to as the "Corporation"), incorporated under the laws of the State of Rhode Island and People's Trust Company, (hereinafter referred to as the "Bank") will enter into an agreement on February 1, 1971.

From time to time the President of the "Corporation" will sell to the "Bank" invoices representing the sale of merchandise. The invoices purchased by the "Bank" will, at the time of purchase, become and remain the sole property of the "Bank" and will be payable only to the "Bank" at its banking office, 145 Westminster Street, Providence, Rhode Island. It is further agreed that each invoice presented to the "Bank" for purchase shall be affixed with an assignee agreement by the "Corporation" reading as follows:

THIS INVOICE IS ASSIGNED AND PAYABLE ONLY TO PEOPLE'S TRUST COMPANY
145 WESTMINISTER STREET, PROVIDENCE, R.I. 02903

It is further agreed that should the "Corporation" negotiate any invoice to the "Bank" that is or proves to be nonvalid, or is or becomes disputed, the "Bank" will, at its discretion, have and may affect full recourse to the "Corporation."

bank paid Hallcraft 90% of a receivable's face value, it essentially lent the company money discounted by a 10% charge representing interest. *Michie, supra* at § 3, p. 242. Those receivables are held as security, *Id.* at § 10, p. 259; Mass. Law c. 172, § 48(3) (1977) and, as specified in the agreement here, the bank typically looks first to the security for payment of the debt; but, may look to the principal debtor, i. e., the corporation, if the security is insufficient or worthless. *Michie, supra* at § 16, p. 283.

In short, given the interest charge through a discount, the payment of consideration to Hallcraft by the bank and the company's absolute obligation to repay the money paid, a reasonable conclusion is that the arrangement was, in form, a loan.

Furthermore, the expressions of the parties' intent makes clear that they considered the arrangement a loan. The evidence shows that the bank officers classified the agreement as an "accounts receivable financing loan." In effect, it gave Hallcraft a revolving line of credit for loans and the receivables were security for the loan. Moreover, at trial, defendant testified that he considered the agreement a loan. Even if the agreement were not in form a loan, since the parties' intent controls over the form of the agreement, *Michie, supra* at § 1, 238, the trial court could reasonably conclude on this basis that the parties arranged a loan. Thus, the jury could conclude that defendant made false statements to influence the bank to make a loan. The proof conformed to the indictment.

Even assuming that the proof did not show a "loan," but rather a "purchase" agreement, defendant would have to show that the variance substantially affected his rights. Fed.R.Crim.P. 52(a); *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). As the Supreme Court has noted, the purpose of an indictment is to inform the accused of the charges so that he may prepare a defense, and "in case any other proceedings are taken against him for a similar offense," to show accurately the extent of his acquittal or conviction. *Russell v. United States*, 369 U.S. at 763–64, 82 S.Ct. at 1047; *Berger v. United States*, 295 U.S. at 82, 55 S.Ct. 629.

As to preparing his defense, the indictment "establishes a time frame and identifies the victims, the property . . . [and] the methods." *United States v. Brown*, 540 F.2d 364 (8th Cir. 1976). If the proof and indictment were at variance here, it would not seem to present the reversible situation encountered in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). In that case, the indictment covered unlawful interference with the interstate movement of sand whereas the proof regarded the movement of steel. As stated above, however, we need not reach this question.

■ As to protecting defendant from double jeopardy, the indictment clearly shows that he is being charged under 18 U.S.C. § 1014 (1976) in reference to specific invoices (receivables) offered to Hallcraft under the agreement.

Defendant might also have made the hypertechnical argument that the agreement was a "discount" rather than a "loan." 18 U.S.C. § 1014 (1976). If so, it would be hard to find that such an error substantially affected his rights since loan and discount are synonymous. *Michie, supra* at § 1, p. 236; 54 C.J.S. Loan at 653.

On examination of the record, we can find no error in the conclusion that the evidence showed the agreement was a loan.

## II.

■ Defendant next argues that the judge's failure to instruct the jury specifically that it must find that Cerrito made a materially false statement to obtain a loan for Hallcraft, was a prejudicial amendment of the indictment. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

All 24 counts of the indictment read substantially as follows:

[That (on date)], John A. Cerrito did make a materially false statement to the People's Trust Company, a bank whose deposits are insured by the [FDIC], for the purpose of influencing the action of said bank, in that John A. Cerrito, an officer of Hallcraft, Inc., . . ., assigned to People's Trust Company as collateral and security for a loan granted to Hallcraft . . ., Invoice Number [X] representing it to be an account receivable . . . duly owed . . ., when in truth and fact John A. Cerrito well knew that said invoice was false.

Initially, the district judge instructed the jury, "I am not going to read each count to you because you will have the indictment in your jury room, and you can do that for yourselves."

He also instructed the jury properly on the Government's burden of proving each count beyond a reasonable doubt. The court further instructed the jury that:

The Government must prove beyond a reasonable doubt that the defendant made: (1) a false statement to the bank; (2) that he did so for the purpose of influencing the bank's action in approving a loan; (3) that the statement was false as to a material fact; (4) that he did so knowingly and (5) that the bank's deposits were insured by the [FDIC].

Defendant complains that by not specifying in point (2) that defendant had influenced the bank's action in approving a loan to Hallcraft, the judge prejudicially amended the indictment.

That is an unfair reading of the trial court's instructions.

First, we note that the judge's alleged omission is not fatal if there is no actual prejudice. *United States v. Smolar*, 557 F.2d 13 (1st Cir. 1977), *cert. denied*, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977). The district judge, however, properly set forth the elements of a cause of action under 18 U.S.C. § 1014 (1976). The district judge further directed the jurors' attention to the indictment, which they had in their possession. In each of its 24 counts, the indictment explicitly charged Cerrito with actions relating to "a loan granted *to Hallcraft, Inc.*" (emphasis added.) Under the circumstances, stating the point again would have been redundant.

The type of jury instruction which impermissibly amends an indictment is the type found in *Smolar*. In that case, the judge instructed the jury to find defendant guilty if he breached his fiduciary duty to the corporation. The indictment, on the other hand, was based upon fraud, not a breach of fiduciary duty. *United States v. Smolar*, 557 F.2d at 19. That sort of situation is clearly not presented here.

After reviewing the jury instructions, indictment and parties' arguments, we can find no prejudicial amendment of the indictment warranting reversal.

## III.

Defendant's third argument is that his fifth amendment due process rights were violated by the Government's pre-indictment delay. Defendant's argument rests upon dicta in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The Supreme Court stated that if defendant could prove actual prejudice based on pre-indictment delay, the charges might be dismissed due to the violation of defendant's due process rights. Defendant fails to note, however, the subsequent narrowing of this language by the Court in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

*Lovasco* involved an 18-month delay prior to trial. Defendant alleged that the prosecution could have brought him to trial in one month after postal authorities finished their investigation. During the intervening 17 months, while the Government investigated further, two witnesses crucial to the defense died. Nonetheless, the Court found that the district court erred in finding a violation of defendant's due process rights. *Id.* at 797, 97 S.Ct. 2044.

The Court stated that "Due process clause has a limited role to play in protecting against oppressive delay," *id.* at 789, 97 S.Ct. at 2048, and reaffirmed its statement

in *Marion, supra,* that statutes of limitations provide "the primary guarantee, against bringing overly stale criminal charges." 431 U.S. at 789, 97 S.Ct. at 2048. Moreover, the Court noted that prosecutors have a right to investigate cases fully and a duty not to bring charges until they have probable cause. *Id.* at 791–95, 97 S.Ct. at 2049. All told, the Court limited our role to determining:

[O]nly whether the action complained of—. . .—violated those "fundamental conceptions of justice which lie at the base of our civil and political institutions" [cites] and which define "the community's sense of fair play and decency." [Cites.]

In particular, the Court made an explicit differentiation between investigative delay and delay to gain a tactical advantage.[3] Writing for the Court, Justice Marshall stated:

In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion,* 404 U.S. at 324, [92 S.Ct. 455] precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed." [Cites.] This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time. *Id.* at 795-96, 97 S.Ct. at 2051–2052.

The instant case is no more compelling than *Marion* or *Lovasco.* The Government

brought suit against defendant within the relevant statute of limitations as enacted by Congress. 18 U.S.C. § 3282 (1976). Moreover, while defendant complains that over four years passed between the time he committed the acts and an indictment was brought the subject matter of the indictment was not even referred to the F.B.I. until April 1976. From that time, it only took the Government 19 months to complete its investigation and return a Grand Jury indictment. During this period, the F.B.I. investigated thousands of pages of documents and approximately 27 people. This appears to be the same sort of investigative delay which the Supreme Court recognized as presumptively valid in *Lovasco, supra.*

Defendant's only allegation of prejudice is that some documents were no longer available by trial and for many, only copies existed. Nowhere does defendant prove any actual prejudice, *Marion,* 404 U.S. at 325–26, 92 S.Ct. 455, nor, most importantly, does defendant even allege any reason for the Government's delay other than for investigative purposes. *Lovasco, supra.*

In summary, we hold that the Government's proof conformed to the Grand Jury's indictment. The agreement could be found reasonably to constitute a loan. Moreover, the district judge's jury instructions did not materially alter the indictment. Finally, the Government's pre-indictment delay did not violate defendant's fifth amendment due process rights.

Accordingly, after oral argument and upon thorough consideration of the parties' submissions, the judgment of the district court is AFFIRMED.

---

3. In both *Marion* and *Lovasco,* the Court noted that deliberate delay by the prosecutor to gain tactical advantage would probably violate the Due Process clause. No such allegation of intentional delay exists here.